PeR Curiam.
The bill of exchange, on which this suit is founded, was made by Augustine Willis, in his lifetime, for the purpose of paying an instalment due the Mississippi Union *613 Bank. Willis had no funds in the hands of the drawee, Hunter, nor had he any expectation that it would be paid. By the Union Bank the bill was forwarded for collection, to the Planters and Merchants Bank, at Mobile, the place of the acceptor’s residence. Whilst the bill was there, Joseph Fowler sued out an attachment against the Urjion Bank, and summoned the cashier.of the Planters and Merchants Bank, as a garnishee, who answered that his bank held this and other paper of the Union Bank, for collection. After Fowler had obtained judgment in the attachment case, he filed a bill in the chancery court in Alabama, for the purpose of subjecting the bill of exchange to the payment of his judgment. To this bill the defendants’ intestate was made a party, and publication was made, according to the order of that court, on the 18th of October, 1841, and in April, 1842, a decree was made, directing the sale of the bill of exchange, which was accordingly sold in June, 1842, when the plaintiff became the purchaser, at about ten cents in the dollar. In April' 1843, the salé was confirmed, and the bill ordered to be transferred to the plaintiff.
The defendants proved that their intestate, on the 1st day of October, 1841, was possessed of Union Bank notes, to the amount of the bill oUexchange, and offered them in payment of the bill, at the branch at Ripley, where by the rules of the barik, the bill was payable. The' cashier informed him, that the bill had been sent to Mobile; whereupon Willis offered to deposit the money, but the cashier refused to receive it. The defendants then offered notes of the Union Bank, to the amount of the bill, as a set-off, to which plaintiff objected, but the objection was overruled.
The plaintiff’s counsel then requested the court to charge the jury, 1. That the bank notes did not constitute a set-off; 2. That if the notes now filed were not the same notes which were held by Willis, in October, 1841, and before the property in the bill was transferred, they must find for the plaintiff These instructions the court refused to give, but instructed for the- defendants, that the bill was the property of the Union Bank, until the transfer, under the decree of the court of chan- *614 eery of Alabama, and if the defendants’ intestate had the notes filed as a set-off, or payment, on the 1st of October, 1841, and at the time he received notice of transfer, they must find for the defendants, which they accordingly did, and the plaintiff moved for a new trial, and took an appeal from the decision overruling his motion.
The transfer which took place under the judicial proceedings in Alabama, demands a passing notice. We are not informed, in such a way as to present the question fairly, what the law of Alabama is, in reference to such a proceeding. But suppose we give to these judicial determinations their full effect,-they can amount to nothing more than a legal transfer of the bill of exchange. The time of the transfer is a matter of some consequence. By the proceedings in attachment, the plaintiff, of course, acquired no right to the bill, npr was the right of the Union Bank divested, even as to the debt. The garnishee did not answer that he owed anything, but that he held certain securities belonging to the Union Bank. The defendants’ intestate was not garnishee, nor had he notice of the proceedings, and of course his indebtedness was not changed. It was by virtue of the chancery proceedings that the transfer took place. The notice of this proceeding was published on the 18th of October, 1841. For the purpose of giving courts of chancery jurisdiction over foreign defendants, publication is resorted to, and this is considered constructive notice, for the purpose of enabling the court to proceed to a decree, but such decrees operate in rem exclusively. By the decree, the interest in the bill of exchange passed, but it is by no means clear, that the defendants’ intestate is to be considered as having notice of this transfer. Such notice must be actual, and not constructive, to deprive the party of his set-off. H. & H. Dig. 373. The bringing of the suit is the first actual notice of transfer, to the defendants.
This question, however, is perhaps immaterial, and we are not called oil to express any decisive opinion about it. We regard it as certain, that the judicial transfer is only entitled to the same effect, that a transfer made by the bank would be en *615 titled to. Suppose, then, on the-18th of October, 1841, the defendants’ intestate had notice of the transfer ; it is in proof, that on the 1st of .October, 1841, he was possessed of the amount of the bill in Union Bank notes. On the trial, the defendants introduced the same amount; the jury were bound to infer from this proof that the notes'were the same, or at least it was sufficient to justify them in doing so. The court charged them, that if the defendants’ intestate had the notes filed, as a setroff, on the 1st of October, 1841, and at the time he received notice of the transfer, they must find for the defendants. On this fact, then, they must have paásed in rendering their verdict. It would seem, then, that the-.defendants have brought their defence within the provisions of the statute, in reference to set-off.
But there are other statutory provisions, which, must be regarded as decisive of this question. Passing over the act of 1840, which prohibits banks.from transferring their bills receivable, and the repugnance, in effect, of this judicial proceeding, to the spirit and intention of that act, we cqme directly to the act of 1842, which completely covers this case. It provides, that in all proceedings against those who may be debtors to banks in this state, by garnishment, the final judgment shall be only given against them, to be discharged in the issues of the banks, and that such garnishee, either before or after judg.ment, may tender in payment of such demand, the amount in the issues of the bank. Acts of 1842, 140. This act was . passed in February, 1842, and was in full force, when the plaintiff acquired the right to the bill of exchange, which was in June, 1842. The relative situation of the parties is precisely the same, as though the defendants had been called on by a garnishee summons. The effect of a garnishment is a judicial transfer of the debt, to the creditor of a creditor. The plaintiff claims under a judicial transfer of the debt, and the evidence of the debt, which took place .under the laws of Alabama, in a judicial tribunal of that state. We cannot permit the laws of a sister state to defeat the provisions of our own laws, or to interfere with our policy, or to work a prejudice to our citizens. To *616 hold that the plaintiff, in this case, could recover anything more than the value of the Union Bank notes, would certainly defeat our policy, and violate, at least, the spirit of our law. The Union Bank notes, or their value, the plaintiff was entitled to, but filing them as a set-off, was equivalent to a payment in court, and the verdict was therefore correct. The plaintiff is, of course, entitled to the Union Bank money, and the judgment must be affirmed.